UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

SUNNYLAND FARMS, INC.,                          Case No. 14-10231 TA

       Debtor.

### MEMORANDUM OPINION

Before the Court is Petitioning Creditors' Motion to Convert Debtor's Chapter 11 Case to a Chapter 7 Case Pursuant to 11 U.S.C. § 1112(b)[1] (the "Motion"). The Court held a final hearing on the Motion on August 21, 2014 and took the matter under advisement.[2] For the reasons set forth below, the Court will deny the motion.

### I.     FACTS

The Court finds the following facts:[3]

The Petitioning Creditors commenced this case by filing an involuntary petition for Chapter 7 relief on January 30, 2014. Debtor moved to convert the case to a voluntary case under Chapter 11 on April 20, 2014. The Court entered an order granting Debtor's motion for conversion on May 8, 2014.

Sunnyland Farms Incorporated ("Debtor") is a New Mexico corporation that owns and operated a hydroponic greenhouse complex (the "Greenhouse") in Grants, New Mexico. The

---

[1] Unless otherwise indicated, all statutory reference are to 11 U.S.C..
[2] Compelling circumstances prevented the court from meeting the 15-day time limit for decision on the Motion outlined in § 1112(b)(3).
[3] In making these findings, the Court took judicial notice of the docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir.1979) (holding that a court may, sua sponte, take judicial notice of its docket); *In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 8 (1st Cir.1999) (citing Fed.R.Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade*, 496 B.R. 520, 524 (Bankr.N.D.Ill.2013) (a "bankruptcy court [is authorized] ... to take judicial notice of its own docket").

Greenhouse consists of about 70 acres of land, improved with a 19.7 acre greenhouse and a 70,000 square foot warehouse.

A similar greenhouse in Estancia, New Mexico, also owned by the Debtor, was destroyed by fire in 2003. Debtor sued the Central New Mexico Electrical Cooperative ("CNMEC") for breach of contract and tort, alleging that CNMEC wrongfully shut off electricity to the Estancia greenhouse, which prevented Debtor from pumping the water it needed to fight the fire. After many years of litigation, the Debtor received payment of about $5.45 million in cash, which currently is held in a state court registry.

The only crop ever produced in the Greenhouse was a crop of tomatoes produced in 2005. Currently, the Greenhouse is in complete disrepair, apparently because the Debtor lacked funds necessary to make repairs, maintain or secure the Greenhouse, or operate. The roof has partially collapsed and the electrical and other systems have been stolen.

Debtor's Chapter 11 case has been in progress for less than four months. Debtor filed its statements and schedules on May 21, 2014; it scheduled assets totaling $5,815,006.71 and liabilities totaling $41,890,322.38.

Debtor values the Greenhouse at $365,006.71. The low value is the result of a collapsed roof, substantial vandalism and theft loss, and lack of maintenance. Debtor asserts that the value of the Greenhouse could not fall any lower and would not be affected by future damage to the improvements.

Debtor lists secured liabilities totaling $41,145,572.38. The largest secured creditor, 1670083 Ontario Inc. ("Ontario") has a lien on all of Debtor's assets, securing a debt of about $7.9 million. Ontario purchased the claim from Farm Credit Bank.

Debtor owes approximately $1.7 million in federal and state taxes.  The Internal Revenue Service ("IRS") filed a claim in the amount of $1,322,070.45, of which $459,273.27 is allegedly entitled to priority.  The New Mexico Taxation & Revenue Department ("NMTRD") filed an amended proof of claim in the amount of $43,058.16, of which $1,145.21 is allegedly entitled to priority.  Debtor also owes about $2.3 million in real property taxes, interest, and late fees to Cibola County.

There is no current insurance on the Greenhouse.  Because of a lack of funds, Debtor has not maintained insurance since 2010.

Debtor has timely filed its monthly operating reports ("MORs") since the case was converted to Chapter 11.

Debtor is current on post-petition taxes, since none have come due since conversion to Chapter 11.  Post-petition property taxes will be due and payable in November, 2014.

The "exclusivity" period under § 1121(c)(2) expired September 5, 2014.  On that date the Debtor filed a plan of reorganization and a disclosure statement.

Unless Ontario's lien is subordinated or set aside, there would be no funds available for junior secured creditors, priority creditors, or general unsecured creditors if the case were converted to Chapter 7.  Petitioning Creditors argued at trial that there may be grounds to equitably subordinate Ontario's secured claim because John Stockwell ("Stockwell"), Debtor's principal and sole shareholder, sought at one point an option to purchase Ontario's claim for a nominal sum.  Stockwell testified that he had initially requested such an option, but later dropped the request on advice of counsel.  Stockwell never obtained such an option.  There is no evidence that Ontario would have agreed to such an option, nor that any creditors other than Ontario would have been harmed had such an option been granted.

The following creditors expressed a preference regarding conversion of the Chapter 11 case:[4]

| Creditor | Type of claim | Approximate amount of asserted claim | Preference |
|---|---|---|---|
| John Wright | Secured – Services Performed | $149,503.42 | Chapter 11 |
| Bevo Farms | Secured | $350,000 | Chapter 11 |
| Carver Oil Company | Administrative & Unsecured - Equipment Lease | Unknown | Chapter 11 |
| JeremyStockwell | Unsecured – Company Expenses | $184,000.00 | Chapter 11 |
| Lynn Stockwell | Secured | $12,797,282.00 | Chapter 11 |
| Albuquerque Packaging Corp. | Secured – Judgment Lien | $143,829.19 | Chapter 11 |
| Kenneth Lujan – DNA Hogs | Secured | $150,000 | Chapter 11 |
| Patricia Tucker | Secured – Legal Fees | $30,000.00 | Chapter 11 |
| Jenna McKie | Unsecured – Company Expenses | $16,400.00 | Chapter 11 |

Petitioning Creditors, in contrast, prefer immediate conversion to Chapter 7.

II.   DISCUSSION

A.   § 1112(b): Conversion for "Cause."

Conversion of a Chapter 11 case is governed by § 1112(b).[5]   The Court is generally required to dismiss or convert a case under § 1112(b) upon a finding of "cause."

Section 1112(b)(4) contains a nonexclusive list of "causes."  *See In re Frieouf*, 938 F.2d 1099, 1102 (10th Cir. 1991) (noting that the list contained in § 1112(b)(4) is nonexhaustive).

---

[4] The chart reflects claims on file and representations made by the creditors either who appeared at the final hearing on the Motion or expressed their opinion via emails that were admitted into evidence at the final hearing on the Motion.  These findings do not establish conclusively the existence, or extent, of any creditor's allowable claim.  Creditors may hold claims not listed in this chart.

[5] *See* § 1112(b)(1) ("on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate ...").

Whether "cause" exists to convert a case is a threshold issue. *In re Melendez Concrete Inc.*, No. 11-09-12334 JA, 2009 WL 2997920, at *3 (Bankr. D. N.M. 2009). If cause is established, the Court then considers whether "conversion or dismissal . . . [is in the] best interest of creditors and the estate." *In re American Capital Equipment, LLC,* 688 F.3d 145, 161 (3rd Cir. 2012).

The party requesting dismissal or conversion under § 1112(b) bears the burden of establishing cause by a preponderance of the evidence. *In re ARS Analytical, LLC*, 433 B.R. 848, 861 (Bankr. D.N.M. 2010). In analyzing whether cause for conversion has been established under § 1112(b)(4), the Court applies a materiality standard to the enumerated grounds that constitute cause. *In re Melendez Concrete Inc.*, 2009 WL 2997920, at *5.

Petitioning Creditors assert that cause exists to convert the case under subsections (b)(4)(A) – continuing diminution in value of the estate; (b)(4)(B) – gross mismanagement; (b)(4)(C) – failure to maintain insurance; and (b)(4)(I) – failure to pay taxes.

        1.        <u>Substantial Loss or Diminution of the Estate and Absence of Reasonable Likelihood of Rehabilitation Under § 1112(b)(4)(A)</u>. Petitioning Creditors assert under § 1112(b)(4)(A) that there is a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." This argument is not supported by the current evidence in the record. Debtor's case has been pending for four months. Debtor is not engaged in business operations and has no post-petition income. Debtor has filed a plan of reorganization and a disclosure statement.

Petitioning Creditors made very little effort to present evidence in support of their position. They called no witnesses and submitted as exhibits only the Debtor's schedules and monthly operating reports. At the Court insistence Debtor's counsel called Mr. Stockwell to the stand and the Petitioning Creditors cross-examined him, but that is all.

There is no evidence that the bankruptcy estate, consisting only of the Greenhouse and the Funds, has lost value since the Chapter 11 case began.  Further, there is no evidence that the estate would diminish if the case remains in Chapter 11.  Petitioning Creditors pointed to a lack of insurance.  That is a real concern, but since there is no equity in the Greenhouse for the estate, any further damage to the Greenhouse would hurt only Ontario.  Ontario is not seeking conversion, and apparently is willing to let Debtor attempt to reorganize.  The Court finds that, at least at this time, cause does not exist under § 1112(b)(4)(A).

2. <u>Gross Mismanagement of the Estate Under § 1112(b)(4)(B)</u>.  Petitioning Creditors assert that cause to convert exists under § 1112(b)(4)(B) based on Debtor's gross mismanagement of the estate.  The alleged gross mismanagement must occur post-petition.  *See In re Rent-Rite Super Kegs West Ltd.,* 484 B.R. 799, 809 (Bankr. D. Colo. 2012) (pre-petition gross mismanagement is not cause under § 1112(b)(4)(B) because the estate is a post-petition entity); *In re First Assured Warranty Corp.,* 383 B.R. 502, 544 (Bankr. D. Colo. 2008), citing *In re Rey,* 2006 WL 2457435, *5 (Bankr. N.D. Ill. 2006).

There is no evidence of mismanagement, let alone gross mismanagement, post-petition. Since bankruptcy proceedings began, Debtor has timely filed all monthly operating reports and has drafted and filed a plan of reorganization.  Prudent management dictates that insurance be in place if possible, but here the estate has no money with which to pay insurance premiums.  The Court finds that Petitioning Creditors have failed to prove post-petition gross mismanagement as specified in § (b)(4)(B).

3. <u>Failure to Maintain Insurance Under § 1112(b)(4)(C)</u>.  Petitioning Creditors assert that cause to convert exists under § 1112 (b)(4)(C) based on Debtor's failure to maintain insurance, posing a risk to the estate or the public.  There is no dispute that Debtor

Case 14-10231-t11    Doc 92    Filed 09/09/14    Entered 09/09/14 10:14:55 Page 6 of 10

currently has no insurance of any kind.  However, Petitioning Creditors presented no evidence that the lack of insurance poses a material risk to the estate.  Debtor's uncontroverted testimony is that the Greenhouse's value is as low as it can possibly go based on physical condition.  Furthermore, as set forth above any risk of further loss to the Greenhouse is borne by Ontario, not the estate, because there is no equity in the property.

There also is no evidence that the lack of insurance poses a risk to the public.  If Debtor were an operating business, liability insurance in all likelihood would be required for the benefit of the Debtor and the public.  Lacking operations, the only potential harm would be to trespassers and thieves.  Petitioning Creditors presented no evidence that the Greenhouse is an attractive nuisance or otherwise a danger to ordinary citizens.  The Court is not happy that the Debtor cannot afford to purchase reasonable insurance, and will not allow the lack of insurance to go on any longer than necessary to see if Debtor's plan of reorganization is confirmable and has sufficient creditor support.  Nevertheless, the Court finds that the current situation does not, at this point in the case, constitute cause under § 1112(b)(4)(C).

    4.    <u>Failure to Pay Taxes Under § 1112(b)(4)(I)</u>.  Finally, Petitioning Creditors assert that cause exists to convert based on Debtor's "failure to timely pay taxes owed after the date of the order for relief."  The Code plainly refers to taxes that become due after the date that the order for relief is entered.  Unpaid prepetition taxes are not relevant in the cause analysis.

Debtor owes significant taxes to the IRS and the NMTRD.  Petitioning Creditors presented no evidence, however, that any post-petition taxes have gone unpaid.  Since Debtor is not operating, the only taxes accruing post-petition likely are real property taxes.  Those are paid twice a year, in April and November.  *See* N.M.S.A. § 7-38-38.  Thus, Debtor's first post-petition property tax bill will be due in about two months.  Debtor's plan of reorganization addresses

-7-

payment of all taxes owed. The Court finds no failure to pay post-petition taxes and therefore no cause to convert under § 1112 (b)(4)(I).

B.  Best Interest of Creditors and the Estate.

The Court has reviewed the status of the case and the interests of secured and general unsecured creditors, and finds that conversion or dismissal would not benefit unsecured creditors at this time.

Debtor has scheduled liabilities of more than $41.89 million and assets of $5.8 million. The first position secured creditor, Ontario, filed a proof of claim for $7.9 million. If the estate were liquidated under Chapter 7, Ontario's secured claim would prevent payment of any other claims, secured or unsecured. Allowing the Debtor a chance to file a plan of reorganization provides a possibility that other creditors would receive a dividend on their claims.

Petitioning Creditors argue that Ontario's secured claim could be equitably subordinated, thus providing assets to pay general creditors. That argument is unpersuasive based on the evidence in the current record. Little or nothing in the record indicates grounds for equitable subordination. Stockwell's one-time interest in obtaining an option to take over Ontario's secured claim for a nominal purchase price might (or might not) be a breach of Stockwell's duty to creditors, but it does not follow that Ontario's secured claim is at risk. The Court does not have many facts relating to this issue, but from the current record there is no reason to believe an equitable subordination claim has much promise.

Further, the Petitioning Creditors could bring an equitable subordination claim on their own if they chose. *See, e.g., In re Vitreous Steel Products Co.,* 911 F.2d 1223, 1231 (7th Cir. 1990) (individual creditor has standing to pursue equitable subordination claims under § 510(c); *P.W. Enters., Inc. v. N.D. (In re Racing Servs., Inc.),* 363 B.R. 911 (8th Cir. BAP 2007), reversed

on other grounds 540 F.3d 892 (8th Cir. 2008) (a creditor has standing to pursue § 510(c) equitable subordination claim); *In re Elrod Holdings Corp.,* 392 B.R. 110, 115 (Bankr. D. Del. 2008) (an injured secured creditor should be permitted to pursue an equitable subordination claim apart from the trustee); *Clippard v. LWD, Inc. (In re LWD, Inc.),* 342 B.R. 514, 520 (Bankr. W.D. Ky. 2006) (equitable subordination claims may be brought by individual creditors on their own behalf); *In re J.S. II, L.L.C.,* 389 B.R. 570, 580 (Bankr. N.D. Ill. 2008) (the Seventh Circuit has held that creditors have direct standing to pursue an equitable subordination claim under § 510); *Bunch v. J.M. Capital Fin., Ltd. (In re Hoffinger Indus., Inc.),* 327 B.R. 389, 413 (Bankr. E.D. Ark. 2005) (Congress intended for § 510(c) to be available to parties other than the trustee).

All this is not to say that Debtor appears to be headed for easy confirmation of a plan of reorganization. Based on the evidence before the Court, it seems Debtor will have an uphill battle to obtain sufficient funding to pay creditors as required by the Bankruptcy Code, rebuild the Greenhouse, recommence operations, and grow vegetables in the years ahead. If Debtor's reorganization efforts fail or are abandoned, the Court will revisit the issue of conversion or dismissal, likely at the conclusion of a confirmation hearing on the Debtor's recently filed plan of reorganization. The lack of insurance adds additional pressure.

### III. CONCLUSION

The Court concludes that cause has not been established for conversion at this time. The Court will allow Debtor to proceed with its Chapter 11 case and pursue confirmation of its plan of reorganization. Because there is no liability insurance, the Court will require the Debtor to proceed expeditiously toward confirmation. If the Debtor is able to raise enough money in the

near future to purchase insurance, the Court will decrease the time pressure to reorganize or convert.

*/s/ David T. Thuma*
_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: September 9, 2014

Copies to:

Christopher M. Gatton
10400 Academy NE, Ste. 350
Albuquerque, NM 87111

Robert A. Johnson
P.O. Box 25547
Albuquerque, NM 87125

Stephen Curtis
6747 Academy Rd. NE, Suite D
Albuquerque, NM 87109