UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

SUNNYLAND FARMS, INC.,                                    Case No. 14-10231-t11

     Debtor.

## MEMORANDUM OPINION

Before the Court is Jerry Capussi's motion to compel the Debtor to issue shares of stock in accordance with Debtor's confirmed Chapter 11 plan. Capussi argues that the Plan is ambiguous and should be interpreted to allow him to receive stock rather than cash. Debtor counters that the Plan requires Capussi to settle for cash. The Court agrees with Capussi's position.

I.       FACTS[1]

The Court finds[2] the following facts:[3]

Debtor is a New Mexico corporation that owns a large greenhouse near Grants. Capussi assisted Debtor in developing its New Mexico greenhouse business.

---

[1] The parties waived their right to an evidentiary hearing and consented to the Court ruling on the Motion and the objection. The Court will resolve the requested issue as a matter of law. *See Mark V, Inc. v. Mellekas*, 845 P.2d 1232, 1235-36 (N.M. 1993) ("In the event the parties do not offer evidence of the facts and circumstances surrounding execution of the agreement and leading to conflicting interpretations as to its meaning, the court may resolve any ambiguity as a matter of law by interpreting the contract using accepted canons of contract construction and traditional rules of grammar and punctuation.").

[2] If any finding of fact may more properly be construed as a conclusion of law, it is adopted as such, and vice versa. The Court may make additional findings of fact and conclusions of law as it deems appropriate or as may be requested by any of the parties.

[3] In making these findings, the Court took judicial notice of the docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir.1979) (a court may, sua sponte, take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir.1999) ("[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade*, 496 B.R. 520, 524 (Bankr.N.D.Ill.2013), *affirmed*, 498 B.R. 852 (N.D. Ill. 2013) (a "bankruptcy court [is authorized] ... to take judicial notice of its own docket").

Because of a large fire at a former greenhouse location, Debtor fell on hard times. Creditors filed an involuntary bankruptcy case against Debtor, which it converted to a voluntary Chapter 11 case.

Debtor filed a fourth amended plan of reorganization on January 14, 2015.  The plan contains the following:

> **6.5.**    Allowed **Class 5** claim holders *shall be able to choose from one of the two following treatments, with such election being made on the ballot accepting or rejecting this Plan.*
>
> 6.5.1.  Claim holder shall be paid 1.00% of their allowed claim no later than thirty (30) days after the Effective Date or, in the case of disputed claims, on the later of the Effective Date or the date upon which Orders resolving all pending claims objections have been Entered and have become Non-Appealable; or
>
> 6.5.2.  Claim holder shall be issued an amount of shares of New Common Stock in the Debtor equal to one (1) share for every dollar of their allowed claim, rounded to the nearest dollar, on the Stock Distribution Date.
>
> *If no ballot is received, Claim Holder shall receive a payment pursuant to paragraph 6.5.1 herein and shall not have an option to receive stock.*

(Italics added).  The disclosure statement stated:

> All holders of allowed unsecured claims… will be given the opportunity to receive either shares of the Reorganized Debtor … Alternatively, if a creditor opts for a payout rather than shares in the Reorganized Debtor, it will be paid 1% of its allowed claim.  The voting ballot to accept or reject the Plan will allow unsecured creditors to elect their preferred treatment.  In the event the creditor fails to vote on the plan, it will be assumed that the creditor elects to receive a payment rather than stock.

And elsewhere:

> When voting to confirm or reject the Plan, holders of allowed general unsecured claims (including those who hold deficiencies on secured claims) shall have the option to elect to receive either payment or a stock distribution as set forth in paragraphs 6.3.5 of this disclosure statement and 6.5 of the Plan.

-2-

The Plan treatment is for *allowed* Class 5 claims. During the crucial voting process, Capussi's Class 5 claim was disputed, so he could not vote.[4] The plan does not say whether, how, or when the holder of a Class 5 claim may elect to receive cash or stock when his claim is disputed during the voting period but later allowed.

Despite being unable to vote, Capussi cast a ballot against the Plan. He did not elect a distribution preference on his ballot. The Court disregarded Capussi' ballot. Capussi did not object to the plan or actively oppose confirmation.

The Court confirmed the Plan by an order entered April 8, 2015. The confirmation order included a finding that the plan complied with all applicable provisions of the Bankruptcy Code.

After confirmation, the Court held an evidentiary hearing on Debtor's objection to Capussi's claim. On August 18, 2015, the Court entered an order allowing the claim in the amount of $108,000. By then, the voting was long over. The same day, Capussi notified Debtor that he elected to take stock rather than cash. The Debtor refused to issue the shares.

The Plan provides that the Court shall retain jurisdiction after the effective date for "interpretation or construction of the Plan."

## II.     DISCUSSION

A.      Jurisdiction.

There is little question that interpretation of the language of a confirmed plan involving distribution to creditors is within the core jurisdiction of the Court. *See In re Allegiance Telecom, Inc.*, 356 B.R. 93, 98 (Bankr. S.D.N.Y. 2006); *In re Resorts Int'l, Inc.,* 372 F.3d 154, 166–67 (3d Cir. 2004) (interpretation of plan will typically have close nexus to bankruptcy plan); *In re Thickstun Bros. Equip. Co., Inc.*, 344 B.R. 515, 522 (6th Cir. BAP 2006); *Donaldson v.*

---

[4] Capussi filed a proof of claim for approximately $3,200,000 on August 4, 2014. The Debtor objected to the claim on September 5, 2014. Capussi did not seek temporary claim allowance.

*Bernstein (In re Donaldson),* 104 F.3d 547 (3d Cir.1997) (interpretation of the plan will have the requisite close nexus to the bankruptcy plan); *In re Lacy*, 304 B.R. 439, 444 (D. Colo. 2004) ("After confirmation, the Bankruptcy Court retains jurisdiction to interpret, enforce, or aid the operation of a plan of reorganization."); *Matter of Case*, 937 F.2d 1014 (5th Cir. 1991) (dispute affecting the distribution of the debtor's assets following confirmed chapter 11 plan was a core proceeding). *See also Miller v. United States*, 363 F.3d 999, 1004-05 (9th Cir. 2004) ("Although confirmation of a plan generally acts as a final order which binds all parties, regardless of whether they assented to the plan, a plan which is ambiguous as to a material term is subject to interpretation by a reviewing court.").

       B.      <u>Interpreting Confirmed Plans</u>.

       1.      <u>Plan and Disclosure Statement Construed together</u>.  When determining the meaning of a chapter 11 plan, the plan and disclosure statement may be construed together. *See, e.g.*, *In re Penberthy*, 211 B.R. 391 (Bankr. W.D. Wa. 1997) (disclosure statement may be extrinsic evidence of parties' intent).  However, the Plan is controlling.  *See In re Sonoma V*, 34 B.R. 758, 761, (9th Cir. BAP 1983) ("whatever was said in the disclosure statement, the language of the plan itself is controlling"); *In re Futter Lumber Corp.*, 2011 WL 5417094, at \*5-6 (Bankr. E.D. NY 2011) (plan controls, and disclosure statement does not have res judicata effect.).

       2.      <u>Contract Interpretation Rules</u>.  Confirmed chapter 11 plans are interpreted "under the rules governing the interpretation of contracts."  *Miller v. United States*, 363 F.3d 999, 1005-06 (9th Cir. 2004); *re Heartland Steel, Inc.,* 389 F.3d 741, 744-45 (7th Cir. 2004); *Official Comm. of Unsecured Creditors v. Dow Corning Corp. et al (In re Dow Corning Corp.),* 456 F.3d 668, 676 (6th Cir. 2006); *In re W. Integrated Networks, LLC*, 322 B.R. 156, 160-61

(Bankr. D. Colo. 2005) ("A chapter 11 plan is a contract between a debtor and the creditors of the bankruptcy estate. As such, it must be interpreted according to the general rules for contractual interpretation.") (citations omitted). Plans may be interpreted according to either state or federal common law canons of contract interpretation.[5] There does not appear to be any relevant difference between federal and New Mexico law on how to interpret ambiguous contracts.

A contract is ambiguous if it is "capable of more than one reasonable interpretation." *Miller v. United States*, 363 F.3d 999, 1004 (9th Cir. 2004); *see Smart v. Gillette*, 70 F.3d 173, 178 (1st Cir. 1995) ("Contract language is usually considered ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of the words employed and obligations undertaken.") (quoting *Fashion House, Inc. v. K mart Corp*., 892 F.2d 1076, 1083 (1st Cir. 1989); *Mark V, Inc. v. Mellekas*, 845 P.2d 1232, 1235 (N.M. 1993) (an ambiguity exists when the parties' expressions of mutual assent lack clarity). The parties have admitted an ambiguity exists.

Generally, where an ambiguity exists courts consider extrinsic evidence to determine the parties' intent. If no such extrinsic evidence is available, however, courts apply rules of contract interpretation. *See Mark V, Inc. v. Mellekas*, 845 P.2d at 1235-36 ("In the event the parties do not offer evidence of the facts and circumstances surrounding execution of the agreement and

---

[5] The Tenth Circuit has not determined whether plans are interpreted under either state or federal principles of contract interpretation. However, in the Tenth Circuit, a court may resort to state law to interpret a plan. *See In re K.D. Co., Inc*., 254 B.R. 480, 491 (10th Cir. BAP 2000) (bankruptcy court did not err in interpreting plan under New Mexico contract interpretation principles). Here, the Court need not determine whether state or federal law applies, as under either approach, the court may apply general canons of contract interpretation. *See Mark V, Inc. v. Mellekas*, 845 P.2d at 1235-36 (under New Mexico law, where no evidence presented, ambiguity resolved as a matter of law according to general canons of contract interpretation), *and Smart v. Gillette*, 70 F.3d 173, 178 (1st Cir. 1995) (under federal common law, look to common-sense canons of contract interpretation).

Case 14-10231-t11    Doc 276    Filed 03/28/16    Entered 03/28/16 16:36:45 Page 5 of 11

leading to conflicting interpretations as to its meaning, the court may resolve any ambiguity as a matter of law by interpreting the contract using accepted canons of contract construction and traditional rules of grammar and punctuation.").

> 3. <u>Restatement (Second) of Contracts</u>. New Mexico courts often refer to the Restatement (Second) of Contracts (West 2009) (the "Restatement") for contract interpretation rules. *See, e.g., Chisos, Ltd. v. JKM Energy, L.L.C*, 258 P.3d 1107, 1111-12 (N.M. Ct. App. 2011); *Farmington Police Officers Ass'n v. City of Farmington*, 137 P.3d 1204, 1213 (N.M. Ct. App. 2006). The Restatement also reflects federal common law. *See, e.g., Defenders of Wildlife v. Salazar,* 877 F. Supp. 2d 1271, 1292 (M.D. Fla. 2012) (when applying federal common law to contract cases, courts generally look to the Restatement for guidance); *Castle v. Caldera*, 74 F. Supp. 2d 4, 10 (D.D.C. 1999) (stating that the Restatement "embodies" federal common law). The Restatement contains the following contract interpretation rules:[6]

- Courts should interpret contract as a whole and interpret words in light of all the circumstances and the principal purpose of the parties (§ 202);

- An interpretation that gives a reasonable, lawful, and effective meaning to all terms is preferred to an interpretation that leaves a part unreasonable, unlawful, or of no effect (§ 203(a));

- When the parties to a contract have not agreed to a term essential to their rights and duties, reasonable terms should be supplied by the court (§ 204); and

- When choosing among reasonable meanings, the meaning is preferred that operates against the drafter (§ 206).

> C. <u>Applying the Restatement's Rules to This Dispute</u>.

> 1. <u>The Plan Should Be Interpreted In Light of Circumstances and Principal Purpose</u>. As with contracts, the Court must interpret the Plan in light of the circumstances and

---

[6] There are a number of other interpretation rules, involving, e.g., good faith, public policy, and unconscionability, but they do not apply to this situation.

-6-

the principal purpose of the parties. Restatement, § 203; *Mark V.*, 845 P.3d at 1237 (interpret agreement in light of all circumstances); *Pub. Serv. Co., of New Mexico v. Diamond D. Const. Co.*, 33 P.3d 651, 659 (N.M. Ct. App. 2001) (citing the Restatement); *Erwin v. United Benefit Life Ins. Co.,* 371 P.2d 791 (N.M. 1962); *In re Realia, Inc.,* 2012 WL 833372, at \*10 (9th Cir. BAP 2012) (ambiguous contract is interpreted in the light of all the circumstances, and if the principal purpose of the parties is ascertainable, it is given great weight). The Plan gives allowed Class 5 claimants the right to elect stock or cash. This provision likely was intended to increase creditor support for the plan by giving them a choice of payment. And indeed, the Class 5 claims voted to accept the Plan. Further, when the Plan was filed Debtor had objected to several Class 5 claims, including Capussi's. The Court holds that it furthers the principal purpose of the parties, and is consistent with the circumstances, to construe the Plan as giving all Class 5 claimants the right to choose cash or stock, whether or not their claims were allowed during the voting period.

        2.      The Plan Should be Interpreted to Comply with the Bankruptcy Code. As ambiguous contracts should be interpreted to comply with the law, ambiguous plans should be interpreted to comply with the Bankruptcy Code. *See In re Forklift LP Corp.*, 363 B.R. 388, 394, 398 (Bankr. D. Del. 2007) (unless a plan clearly takes them away, creditors are entitled to rely on rights granted by the Bankruptcy Code); *In re Jankins*, 184 B.R. 488, 492 (Bankr. E.D. Va. 1995) (as a matter of policy, ambiguous provision should be construed to comport with Bankruptcy Code); *In re Monclova Care Ctr., Inc.,* 254 B.R. 167, 173 (Bankr. N.D. Ohio 2000) (when "multiple interpretations of a plan are possible, courts should favor an interpretation that is consistent with the Bankruptcy Code over one that contravenes it.").

Section 1123(a)(4) requires that that a plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less

-7-

favorable treatment of such particular claim or interest."  "[C]ourts have interpreted the 'same treatment' requirement to mean that all claimants in a class must have the 'same opportunity' for recovery."  *In re W.R. Grace & Co,* 729 F.3d 311, 327 (3d Cir. 2013), *cited in In re The Vaughan Company, Realtors*, 543 B.R. 325, 339-340 (Bankr. D.N.M 2015) (the "same treatment" requirement of § 1123(a)(4) means that no claim is treated less favorably than any other claim in the class unless the holder of a claim so agrees).  *See also Salmon v. Laster Plot, Inc.*, 189 B.R. 559, 561 n.1 (D. Mass. 1995) (court declines to interpret ambiguous plan provision in manner that violates "fundamental tenant of bankruptcy law that members of class of creditors are to be treated equally.").

A basic tenant of "same opportunity" is that all members of a class be afforded the opportunity, including disputed claims that are allowed later.  *See In re Motors Liquidation Co.*, 447 B.R. 198, 215 (Bankr. S.D.N.Y. 2011) ("Section 1123(a)(4) requires a plan to provide the same treatment for each claim of a particular class.  That means, as a practical matter, that all *allowed* claims within a particular class should get the same treatment, and that if claims are disputed and not yet allowed (but have the potential to be allowed), reasonable measures must be taken to ensure that the required same treatment is received if and when they're allowed.").

Here, the Plan does not explicitly take away Capussi's right to the same treatment as other members of Class 5, or otherwise provide notice thereof.  *See In re Miller*, 253 B.R. at 460 (plan did not state that § 1141(d)(2) didn't apply, or that confirmation would discharge debts that would otherwise be nondischargeable); *In re Forklift* 363 B.R. at 398 ("Defendant would have had little or no reason at the time of the confirmation of the Plan to suspect that its statutory rights were in danger.").  The Court therefore construes the Plan to give Capussi the same treatment given to holders of Class 5 claims that were allowed during the voting period.

-8-

3.     Supplying an Omitted Term.  A reasonable way to view this dispute is that the parties omitted to specify whether, how, and when a disputed Class 5 claim, allowed after the voting period ends, could elect to receive stock or cash.   If so, the Court should supply a reasonable term.  Restatement, § 204.  *See also In re Schellhorn*, 280 B.R. 847, 854-55 (Bankr. N.D. Iowa 2002) (citing the Restatement for the proposition that the court may supply an omitted term comporting with community standards of fairness and policy); *Hutton Contracting Co., Inc. v. City of Coffeyville,* 487 F.3d 772, 784 (10th Cir. 2007) (in contract dispute, court can fill gaps with terms that are reasonable in the circumstances).  The Court concludes that it is reasonable to supply a term that allows disputed Class 5 claimants to make the election shortly after their claim is allowed.  *See* Restatement, § 204, cmt. d (when supplying a reasonable term, the court may look to the law).

4.     The Plan Should be Construed against the Drafter.  Finally, the Plan, like contracts, should be construed against the drafter.  Restatement § 206; *In re Schellhorn*, 280 B.R. 847, 853-4 (Bankr. N.D. Iowa 2002); *In re Forklift LP Corp.*, 363 B.R. 388, 397 (Bankr. D. Del. 2007) (court construed the plan against the drafter); *In re Harstad*, 155 B.R. 500, 510-11 (Bankr. D. Minn. 1993) (ambiguous statement in a plan was insufficient to retain preference action); *In re Miller,* 253 B.R. 455, 459 (Bankr. N.D. Cal. 2000), *aff'd* 284 B.R. 121 (N.D. Cal. 2002) (plan should be construed against the drafter); *In re Vidal*, 234 B.R. 114, 119 (Bankr. D.N.M 1999) (plan strictly construed contract against drafter to protect rights of non-drafter); *In re Collins*, 184 B.R. 151, 154-55 (Bankr. N.D. Fl. 1995) (omission of language in plan dealing with post-confirmation interest construed against drafter).  Here, Debtor drafted the Plan.  Through an apparent oversight, it failed to specify how disputed claims such as Capussi's would be handled

-9-

if the claims were allowed after the voting period. The Court will construe the ambiguity against Debtor and allow Capussi to make his election of taking stock or cash.

D.  Capussi's Ballot.

Debtor argues that Capussi's failure to elect a payment preference on his ballot means that he must accept cash. The Court overrules this argument, for two reasons. First, the Plan only says that Class 5 claim holders must take cash "if no ballot is received." Capussi sent in a ballot. The Plan's failure to require creditors to make the payment election, rather than merely sending in a ballot, is another ambiguity that should be construed against the drafter.

More importantly, since Capussi's ballot was disregarded for the important purpose of Plan confirmation (the Plan might not have been confirmable had Capussi's vote counted in full), it would be unfair to enforce the default provision above when he was not allowed to submit a ballot.

III.  CONCLUSION

The plan is ambiguous because it does not state whether holders of disputed Class 5 claims, later allowed after the voting period ends, can elect to receive stock or cash. Using applicable contract interpretation principles, the Court interprets the Plan to allow Capussi to make the election after his claim was determined and allowed in part. He did so.

A separate order granting Capussi's motion will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered:  March 28, 2016.

Copies to:

Christopher M. Gatton
10400 Academy Rd. NE, #350
Albuquerque, NM 87111

Daniel A. White
320 Gold Ave. SW, Ste. 300A
Albuquerque, NM 87102